UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

MICHAEL MARTIN, and WILLIAM MARTIN

      Plaintiffs,

vs.

MIAMI-DADE COUNTY, FLORIDA; a
Florida County and Political Subdivision of
the State of Florida; MAURICIO DURAN,
Miami-Dade County Police Officer, in his
individual and official capacity; and BRIDGET
DOYLE, Miami-Dade County Police Officer,
in her individual and official capacity.

      Defendants.

_____/

## COMPLAINT

**COMES NOW** plaintiffs, MICHAEL MARTIN (hereinafter "MICHAEL") and WILLIAM

MARTIN (hereinafter "WILLIAM") (hereinafter collectively referred to as "Plaintiffs"), by and

through the undersigned counsel and do hereby file this Complaint against the defendants, MIAMI-

DADE COUNTY, FLORIDA; MIAMI-DADE COUNTY POLICE OFFICER MAURICIO

DURAN, Individually; and MIAMI-DADE COUNTY POLICE OFFICER BRIDGET DOYLE,

Individually; (hereinafter collectively referred to as "Defendants") (hereinafter Defendants

MAURICIO DURAN and BRIDGET DOYLE collectively referred to as "Defendant Officers").  In

support thereof, Plaintiffs state the following:

## JURISDICTION AND VENUE

1.     This is an action for damages in excess of Seventy-Five Thousand Dollars

($75,000.00), exclusive of interest, costs, and attorneys' fees.

2.     Venue is proper in Miami-Dade County, Florida, because the acts and omissions giving

rise to this Complaint occurred in Miami-Dade County, Florida.

3.     Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

## PARTIES

4.     Plaintiff, MICHAEL MARTIN ("Plaintiff Michael"), is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

5.     Plaintiff, WILLIAM MARTIN ("Plaintiff William"), is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

6.     Defendant, MIAMI-DADE COUNTY, FLORIDA, is a municipal corporation and governmental subdivision which is organized and existing under the laws of the State of Florida. The County owns, operates, manages, directs and controls the MIAMI-DADE COUNTY POLICE DEPARTMENT.

7.     Defendants, LIEUTENANT MAURICIO DORAN, and OFFICER BRIDGET DOYLE (hereinafter collectively referred to as "Defendant Officers"), are employees of the MIAMI-DADE COUNTY POLICE DEPARTMENT, and thus employees of Defendant MIAMI-DADE COUNTY, and upon information and belief are residents of Miami-Dade County, Florida and are otherwise *sui juris*.

8.     Defendant Miami-Dade County was at all times relevant to this Complaint responsible for its employees, including the employees of Miami-Dade County Police Department.  Miami-Dade County is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to the Constitutions and laws of the State of Florida and of the United States of America.

9. Miami-Dade County, and its officers, Defendant Officers, are "persons" for purposes of 42 U.S.C. Section 1983.

10. At all times relevant to this cause, Defendant Officers acted in conformance with policy pertaining to, among other things, investigation, arrests, and use of force, as set by Miami-Dade County, as well as acting within the course and scope of their employment. At all times, Defendants acted under color of law.

11. This lawsuit arises out of Defendants' violation of Plaintiffs' federal constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and consequently, Plaintiffs have a viable claim for damages under 42 U.S.C. § 1983. Plaintiffs also have viable state law claims.

## GENERAL ALLEGATIONS

12. On January 10, 2018, Plaintiffs were unlawfully detained, battered, and ultimately arrested by Defendant Officers.

13. On that day, Plaintiffs, who are brothers, were leaving the gym, walking casually towards a desolate parking lot, devoid of other patrons, heading towards their vehicle, when Defendant Doran approached them and began to question them.

14. Since they were leaving the gym, Plaintiffs were dressed in sweatshirts, also known as "hoodies", and basketball shorts, and both Plaintiffs were carrying backpacks. Plaintiff Michael was also carrying a water bottle.

15. At the time Defendant Doran approached them, Plaintiffs were not engaged in any apparent criminal activity, as they were walking to their vehicle.

16. As such, there was no probable cause for this stop.

17.     However, Detective Doran would later recount that "due to the time of night" he began to observe Plaintiffs from a distance to "see their intent."

18.     Detective Doran claimed he "observed both black males walking slowly looking into the parked county vehicle and officers personal cars inside the station parking lot," at which time he "initiated his emergency equipment and attempted to speak to both males to see where they were headed and if they needed directions to exit the closed government establishment."

19.     Detective Doran went on to state that as he approached Plaintiffs, "due to their unorthodox behavior and time of night, [he] requested additional units to assist in stopping both males to question their intentions in the area."

20.     Defendant Doyle was the first assisting officer to arrive at the scene.

21.     At all times relevant to this incident, Defendant Doyle was wearing a body camera.

22.     However, Defendant Doyle's body camera footage clearly contradicts Defendant Doran's version of events.

23.     Defendant Doyle's body camera footage begins with her arrival on scene, as she walks through what appears to be an alley, to approach both Plaintiffs and Defendant Doran, who are seen on the outskirts or perimeter of the desolate parking lot, while the alleged parked county vehicles are seen far in a distance.

24.     While Defendant Doyle's body camera footage contradicts Defendant Doran's stated reason for the initial stop, it clearly depicts Defendant Doran following Plaintiffs and aggressively grabbing Plaintiff William's arm.

25.     The body camera footage shows Defendant Doran aggressively following and grabbing Plaintiff William's arm twice, as Plaintiffs repeatedly informed the officers they were walking towards their vehicle.

26.     During this exchange, Plaintiffs continue to walk casually and unassumingly towards their vehicle, posing no threat of harm to either Defendant Officers, as they attempted to inform the officers they were walking to their vehicle.

27.     Despite their pleas, Defendant Doran continued to accost Plaintiffs and ultimately wrestled Plaintiff Michael to the ground.

28.     At the time Defendant Doran grabbed Plaintiff Michael he was not posing a threat, he was not armed, and there was no probable cause for detaining the Plaintiffs.

29.     As Defendant Doran forced Plaintiff Michael to the ground and laid on top of him, pinning him to the floor, Plaintiff William continued to protest against this hostile and aggressive encounter with the officers, and pleaded with Defendant Officers to desist in their actions.

30.     As Defendant Doran pinned his brother to the floor, Plaintiff William continued to explain Plaintiffs were walking to their vehicle, and pointed in the direction of the vehicle.

31.     Despite Plaintiff Williams' attempts and pleas with open outstretched arms, the body camera footage capture's Defendant Doran instructing Defendant Doyle to tase Plaintiff William.

32.     Shortly thereafter, Defendant Doyle tases an unarmed Plaintiff William.

33.     At all times relevant to this incident, Plaintiffs where unarmed, and posed no threat of immediate harm or death to Defendant Officers.

34.      Additionally, during this incident, Plaintiffs, who were recent transplants from Texas at the time, were homeless and were living out of their vehicle.

35.     On January 10, 2018, the day of the incident, Defendant Officers, acting within the course and scope of their employment arrested Plaintiffs, for the following alleged criminal violations: Battery on a Law Enforcement Officer, in violation of F. S. §784.07(2)(b), a felony in the third degree; Resisting an Officer with Violence, in violation of F.S. §843.01, a felony in the third degree; and Loitering or Prowling, in violation of F.S. §856.021, a misdemeanor in the second degree.

36.     However, in or about July 2018, a jury of their peers acquitted Plaintiffs, finding them not guilty of any wrongdoing.

37.     As a result of Defendant Officer's illegal arrest and excessive use of force, Plaintiffs sustained injuries and endured pain and suffering from the moment they were unjustly profiled and accosted; forced to spend time in jail; and forced to live with the stress of facing felony charges.

38.     As a result of Defendant Officers' illegal arrest and excessive use of force, Plaintiffs suffered special damages as they will be unable to obtain employment equivalent to people who do not have a record with felonious charges.

39.     Defendant Officers' arrested Plaintiffs without probable cause *as a matter of fact* because Plaintiffs had not committed any offense whatsoever.

40.     Lastly, Defendant Officers arrested Plaintiffs without probable cause *as a matter of law* because officers may not arrest a citizen when no crime has been committed or is in the process of being committed.

41.     In plain, Plaintiffs Michael and William's only crime was being two Black men walking down the sidewalk at night.

### COUNT I: DEPRIVATION OF CIVIL RIGHTS BY EXCESSIVE USE OF FORCE IN VIOLATION OF 42 U.S.C. SECTION 1983 AGAINST ALL DEFENDANTS

42.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 above.

43.     Plaintiffs posed no risk of harm to Defendant Officers.

44.     Defendant Doran lacked probable cause to approach Plaintiffs.

45.     Defendant Doran aggressively grabbed Plaintiff William's arm twice, as he, by his own account, attempted to inquire as to Plaintiffs' "intentions."

46.     Thus, this unwarranted and unwanted physical interaction was not in furtherance of an arrest, but was in furtherance of an inquiry.

47.     As such, the battery of Plaintiff William was unjustified, and demonstrated deliberate indifference to his constitutional civil rights.

48.     Further, after the unwarranted aggressive grabbing of Plaintiff William's arm, Defendant Doran then slammed an unarmed Plaintiff Michael to the floor, pinning him to the ground and restricting his movement.

49.     Prior to the excessive use of force, Plaintiff Michael posed no risk of harm to Defendant Doran.

50.     Defendant Doran was not in the process of making a lawful arrest prior to slamming Plaintiff Michael to the ground, and was at no risk of bodily harm from the unarmed Plaintiff Michael.

51.     As such, the battery of Plaintiff Michael was unjustified, constituted an unreasonable and excessive use of force, and demonstrated deliberate indifference to his constitutional civil rights.

52.     In addition, without cause or justification Defendant Doyle contributed to, coordinated with, or otherwise supported Defendant Doran when Defendant Doran used excessive force upon Plaintiff Michael.

53.     By supporting, contributing, or otherwise enabling Defendant Doran's actions, Defendant Doyle allowed an excessive, unnecessary, and disproportionate use of force to be inflicted upon Plaintiff Michael.

54.     By contributing, coordinating, and participating in the unlawful stop of Plaintiffs, Defendant Doyle enabled the use of excessive force by Defendant Doran which was unjustified.

55.     Defendant Doyle was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Michael's rights.

56.     Similarly, the unarmed Plaintiff William posed no risk of harm to Defendant Doyle when she unjustly tased him.

57.     Plaintiff William held his arms outstretched, displaying his empty hands and demonstrating his cooperation with Defendant Officers.

58.     As Plaintiff William pointed towards the direction of his vehicle, without warning, Defendant Doyle tased him.

59.     Defendant Doyle failed to issue a warning, was not at risk of harm, and was not in the process of effectuating an arrest prior to tasing Plaintiff William.

60.     As such, the tasing of Plaintiff William by Defendant Doyle was unjustified, and constituted an unreasonable and excessive use of force.

61.     Likewise, without cause or justification, Defendant Doran contributed to, coordinated with, or otherwise supported Defendant Doyle when Defendant Doyle used excessive force upon Plaintiff William.

62.     By supporting, contributing, or otherwise enabling Defendant Doyle's actions, Defendant Doran allowed an excessive, unnecessary, and disproportionate use of force to be inflicted upon Plaintiff William.

63.     By contributing, coordinating, and participating in the unlawful stop of Plaintiffs, Defendant Doran enabled the use of excessive force by Defendant Doyle which was unjustified.

64.     Defendant Doran was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff William's rights.

65.     The battery, detention, and arrest of Plaintiffs was the result of conduct that was reckless, malicious, and deliberately indifferent to Plaintiffs, and in depriving them of their constitutional rights.

66.     Defendant Officers, while acting under color of law as authorized officers and agents of Miami-Dade County and the Miami-Dade Police Department, and while approaching and attempting to stop Plaintiffs in purported furtherance of their official duty, caused a constitutional deprivation of the rights of Plaintiffs, under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the comparable provisions of the Florida Constitution.

67.     The actions alleged in this complaint directly and proximately resulted in injury to Plaintiffs.

68.     The deprivation of Plaintiffs' constitutional rights was proximately and substantially caused by Miami-Dade County and the Miami-Dade County Police Department by a:

a.     Deliberate indifference in having a policy and/or custom and practice that directs police officers in the use of deadly force absent the required existence of objective facts to support such action, and/or

b.     Deliberate indifference in having a policy and/or custom and practice of ratifying and approving unreasonable shootings of persons by Miami-Dade County police officers without implementing methods and training necessary to prevent such shootings, and/or

c.     Deliberate indifference in having a policy and/or custom and practice of failing to discipline police officers who use deadly force improperly and who unreasonably shoot persons resulting in implicit approval of such actions, and/or

d.     Deliberate indifference in failing to properly train police officers in the proper and legal use of deadly force and sanctioning improper use of deadly force, and/or

e.     Allowing numerous police shootings to occur over a significant number of years without appropriate consequences to other offending officers, and/or

f.     Failing to appropriately, train, supervise, discipline, and otherwise manage police officers in the safe and professional methods of traffic stops and use of deadly force.

57.     Further, Defendant Miami-Dade County has an unofficial policy or custom of conducting insufficient investigations calculated to exonerate its officers when its officers are accused of using excessive force during encounters with civilians.

58.     Pursuant to this unofficial policy or custom, despite there being thousands of excessive force complaints lodged against its officers, not a single Miami-Dade County officer has been suspended without pay, arrested, or fired except in cases where the excessive force is caught on tape and is so patently obvious that no possible defense can be raised.

59.     In accordance with this policy, Miami-Dade County also has no system in place to supervise its officers' activities to make sure that evidence incriminating its officers during excessive use of force incidents can be collected and preserved.

60.     Because of this, the only times in recent history that any of the Defendant Miami-Dade County officers have been suspended without pay, arrested, or fired have been times when civilians capture the incident on cell-phone video and release that tape to the media.

61.     Defendant Miami-Dade County's officer protectionist custom is so widespread that at least on one occasion an officer has been captured on tape punching civilians without any justification, and the officer has been allowed to retain his pay and has not been arrested.

62.     Defendant Miami-Dade County implements this officer protectionist policy in two ways: 1) by not prosecuting, reprimanding, or firing officers who use excessive force unless there is video tape evidence of the excessive force that is conclusive beyond all doubt, and 2) creating an environment among its officers that discourages the officers from speaking out when they witness fellow officers engaging in excessive use of force.

63.     Pursuant to Defendant Miami-Dade County's unofficial custom, even when the use of force is indefensible and readily apparent from video evidence, officers are routinely allowed to remain on the job, arrest free, and without repercussions for months at a time.

64.     As a result of this policy officers who routinely use excessive force on civilians they encounter move up in the ranks in the Miami-Dade Police Department.

65.     Similarly, the County implements this policy by conducting one-sided investigations into use of force incidents where the word of the officers automatically carries more weight than the words of the civilian witnesses.

66.     Furthermore, instead of arresting and prosecuting its officers based on the standard of probable cause, the standard by which every arrest is measured in the United States, Miami Dade

County has instituted an unofficial policy where officers are not to be arrested unless there is evidence beyond all shadow of a doubt.

67.   Under this policy eyewitness testimony is not enough to sustain findings during internal affair investigations, let alone arrest or discipline its officers.

68.   In a County where people are routinely prosecuted at the state level for charges ranging from misdemeanors to homicide based on the testimony of a single eyewitness, this policy is an outlier that serves to incentivize the County's officers to commit acts of violence against civilians.

69.   The County's policy has the effect of causing officers to feel empowered to use excessive force against the civilians that they encounter in their day-to-day activities.

70.   The fact that neither of the officers who witnessed any of these events reacted, reported, or intervened shows that this is not the first time that these officers witness unwarranted, excessive use of force by their fellow officers.

71.   Their lack of reaction to unwarranted force is as a result of years of witnessing these events go unpunished and be ratified by the County.

72.   The effect of the County's custom of protecting officers who use excessive force can also be gleaned from the suspensions and prosecutions in recent history.

73.   In the last two years alone more Miami Dade police officers have been arrested for drug smuggling, gun smuggling, domestic violence, theft, fraud, insurance fraud, and sexual misconduct than for using excessive force.

74.   Either the County's officers are exponentially more likely to rape, smuggle, commit fraud and domestic abuse than they are of using excessive force, or the lack of reprimands and

prosecutions for excessive force is a result of the County's unofficial custom of protecting officers who use excessive force.

75.     These customs are ratified by the Defendant Miami-Dade County's Chief of Police and Mayor.

76.     Miami Dade County Mayor Carlos Gimenez has gone as far as vetoing the Civilian Independent Review Panel in February of 2018, a panel that is tasked with conducting reviews of the Miami Dade Police Department and its officers' use of force incidents.

77.     Similarly, every time that a use of force incident is covered by the media, Police Chief Juan J. Perez gives a press conference immediately exonerating his officers based solely on the officers' version of events.

78.     The only exception to that mentioned in the above paragraph is when the evidence is so blatant, so indefensible, and so outrageous that no one could justify it.

79.     To date, not a single one of the officers who have stood by and failed to report while another officer uses excessive force has been reprimanded, fired, or prosecuted for failing to report the illegal actions of his fellow officers.

80.     These officers are also not singled out in any of the releases by Chief Juan J. Perez as having failed the citizens of Miami-Dade County for allowing their fellow officers to commit a crime in their presence and not doing anything about it.

81.     These actions not only ratify the officers' illegal behavior, but also encourages and contributes to officers' excessive use of force on civilians.

82.     The Mayor of Miami-Dade County is aware of these events, since they have been widely publicized in the news media.

83.    Yet, to date the Mayor has not called for new measures to be put in place to rectify the fact that officers continue to use excessive force against civilians, and that fellow officers continue to sit by idly and just watch as their comrades use excessive force on civilians.

84.    As a result of the County's unofficial policy of protecting officers who use excessive force, the Defendant Officers felt encouraged and compelled to violate Plaintiffs' constitutional rights by using excessive force against him.

85.    As a direct result of the grossly negligent misconduct of Defendants as set out in this Complaint and associated deliberate indifference, Plaintiffs were injured, and are entitled to recover damages flowing from the deprivations of Plaintiffs' constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution and Federal Law.

86.    Plaintiffs are entitled to attorney's fees expended in this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiffs demand judgment and compensatory and punitive damages against Defendants, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

## COUNT II: FALSE ARREST/FALSE IMPRISONMENT CLAIM DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. SECTIONS 1983 AND 1988

87.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 86 above.

88.    Defendant Officers wrongfully detained Plaintiffs when Defendant Doran unlawfully stopped Plaintiffs, thereby restricting their movement, and subsequently unlawfully arrested Plaintiffs.

89.     Defendant Officers, in all of their actions described in this Complaint, deprived Plaintiffs of their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

90.     Defendant Officers deprived Plaintiffs of their constitutional rights in a way that Defendant Officers fully understood, or should have understood, that their actions were wrongful and in violation of the law.

91.     Defendant Officers personally caused Plaintiffs' arrest in the absence of probable cause that Plaintiffs committed any criminal offense.

92.     The conduct of the Defendant Officers towards Plaintiffs was objectively unreasonable and violated Plaintiffs' clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. Section 1983 to be free from arrest in the absence of probable cause.

93.     As a result of the unlawful detention and false arrest, Plaintiffs were deprived of their civil rights as guaranteed by the Fourth Amendment of the Constitution, suffered humiliation, degradation, apprehension for their bodily security, and other mental and emotional harms, which continue to this day and are likely to continue into the future.

94.     Plaintiffs are entitled to attorney's fees expended in this litigation pursuant to 42 United States Code Section 1988.

WHEREFORE, Plaintiffs demands judgment for compensatory and punitive damages against Defendants and in addition thereto, demands the award of attorney's fees and court costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands a trial by jury on all issues so triable.

## COUNT III: MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983

96.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 94 above.

97.     On January 10, 2018, the day of the incident, Defendant Officers, arrested Plaintiffs, for the following alleged criminal violations: Battery on a Law Enforcement Officer, in violation of F. S. §784.07(2)(b), a felony in the third degree; Resisting an Officer with Violence, in violation of F.S. §843.01, a felony in the third degree; and Loitering or Prowling, in violation of F.S. §856.021, a misdemeanor in the second degree.

98.     After arresting Plaintiffs, Defendant Officers caused a judicial proceeding to be commenced against Plaintiffs by the filing of an information in Miami-Dade County, Florida.

99.     Plaintiffs were charged with Battery on a Law Enforcement Officer, in violation of F. S. §784.07(2)(b), a felony in the third degree; Resisting an Officer with Violence, in violation of F.S. §843.01, a felony in the third degree; and Loitering or Prowling, in violation of F.S. §856.021, a misdemeanor in the second degree.

100.    Said judicial proceeding was instituted by Defendants without probable cause as Plaintiffs did not commit a crime in the officers' presence or otherwise.

101.    There was an absence of probable cause for the original proceedings against Plaintiffs.

102.    Defendant Officers racially profiled Plaintiff and in so doing, acted with malice in instituting the foregoing judicial proceeding which is implied by the lack of probable cause, lack of investigation, and/or with express malice as shown by their reckless disregard of the Plaintiffs' rights and their personal animosity and hostility towards Plaintiffs.

103.    No arrest would have taken place and no charges would have been filed but for the actions of Defendant Officers.

104.    The facts of Plaintiffs' prosecution became known to many persons both known and unknown to Plaintiffs as a result of being made part of the public records of Miami-Dade County, Florida and appearing on court documents available to public scrutiny.

105.    As a proximate and direct result of the actions of Defendant Officers, Plaintiffs sustained damages as a result of having been brought into public scandal with great humiliation and damage to their reputation and having been deprived of their liberty and freedom.

WHEREFORE, Plaintiffs demands judgment for damages against Defendant Miami-Dade county, and Defendant Officers, Individually, for compensatory damages, special damages, costs of this action, and attorney's fees, pursuant to 42 U.S.C. Sections 1983 and 1988, and demands trial by jury on all issues so triable.

## COUNT IV: NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983

106.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 105 above.

107.    All conditions precedent to filing this action have been met by Plaintiffs or have been waived by Miami-Dade County and the Miami-Dade Police Department.

108.    On January 10, 2018, Defendant Officers were acting within the course and scope of their employment as Miami-Dade County police officers.

109.    Because of the failure of Miami-Dade County and the Miami-Dade Police Department to properly train and supervise police officers in the use of deadly force, Defendant Officers breached the duties owed to Plaintiffs, conducting themselves in a careless and negligent manner under

circumstances in which a reasonable police officer would not have believed Plaintiffs posed an immediate threat of death or serious bodily harm to Defendant Officers or to anyone else.

110.   Defendant Doran breached the duties owed to Plaintiff William when he failed to adhere to accepted law enforcement standards and practices for detaining and arresting subjects.

111.   Defendant Doran used an excessive amount of force in assaulting Plaintiff William twice, and tackling Plaintiff Michael to the ground without cause and in a reckless and negligent fashion.

112.   Defendant Doran failed to engage in community policing, and failed to engage in de-escalation tactics during his encounter with Plaintiffs.

113.   Defendant Doyle breached the duties owed to Plaintiff William when she failed to adhere to accepted law enforcement standards and practices for the use of firearms when detaining and arresting subjects.

114.   Defendant Doyle used an excessive amount of force in tasing Plaintiff William without cause and in a reckless and negligent fashion.

115.   Further, Defendant Miami-Dade County failed to properly train and supervise these officers.

116.   Defendant Miami-Dade County breached their duties of reasonable care in the following ways:

      a.   By failing to properly train, instruct and manage its officers with respect to the use of deadly force, and/or

      b.   By negligently and carelessly failing to supervise its agents and officers with respect to the use of deadly force, and/or

      c.   By negligently and carelessly failing to otherwise educate, inform, train, instruct and assess the officers involved in the shooting with regards to the proper use

of firearms, proper techniques for detaining and arresting subjects, and other
police techniques and methods, and/or

d.   By otherwise failing to exercise appropriate supervision and control over the
officers involved in this shooting such that but for such negligent oversight,
the shooting would not have occurred, and/or

e.   By carelessly and negligently failing to appropriately discipline its officers for
past infractions, and/or

f.   By negligently and carelessly failing to provide available resources, back-up,
and support for its officers in the field such that those officers resorted to the
use of unnecessary deadly force.

117.   Defendant Miami-Dade County failed to properly supervise these officers by providing
supervisors who would rubber-stamp any use of force reports made regardless of whether the force
was excessive or not.

118.   Defendant Miami-Dade County has an unofficial policy or custom of conducting
insufficient investigations calculated to exonerate its officers when its officers are accused of using
excessive force during encounters with civilians.

119.   These customs are ratified by the Defendant's Chief of Police and Mayor.

120.   Miami Dade County Mayor Carlos Gimenez has gone as far as vetoing the Civilian
Independent Review Panel in February of 2018, a panel that is tasked with conducting reviews of the
Miami Dade Police Department and its officers' use of force incidents.

121.   Similarly, every time that a use of force incident is covered by the media, Police Chief
Juan J. Perez gives a press conference immediately exonerating his officers based solely on the officers'
version of events.

122.   These actions not only ratify the officers' illegal behavior, but also encourages and
contributes to officers' excessive use of force on civilians.

123.    The Mayor of Miami Dade County is aware of these events, since they have been widely publicized in the news media.

124.    Yet, to date the Mayor has not called for new measures to be put in place to rectify the fact that officers continue to use excessive force against civilians, and that fellow officers continue to sit by idly and just watch as their fellow officers use excessive force on civilians.

125.    Defendant, Miami-Dade County, owed Plaintiffs, as well as all residents of Miami-Dade County, a duty of care to hire and retain and supervise competent, law abiding officers, as well as to enact policies that ensure that officers do not use excessive force against civilians.

126.    Defendant, Miami-Dade County, breached its duty of care to Plaintiffs by hiring and retaining, and improperly supervising Defendant Officers.

127.    As a proximate and direct result of the negligence of Defendant Miami-Dade County, Plaintiff suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiffs demands judgment for compensatory damages and court costs against Defendants, pursuant to 42 U.S.C. Sections 1983 and 1988 and requests trial by jury on all issues so triable.

## COUNT IV: VICARIOUS LIABILITY

128.    For every count, the Plaintiff asserts vicarious liability against Defendants Miami-Dade

County and Miami-Dade Police Department for all actions undertaken by the individual Defendants,

who engaged in the described conduct while acting in the course and scope of employment for the

institutional defendants or as their agents, and carried out the policies, customs, practices, and

procedures of the institutional defendants.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS, MICHAEL and WILLIAM MARTIN, demand a trial by jury,

and judgment against the DEFENDANTS, MIAMI-DADE COUNTY, MIAMI-DADE COUNTY

POLICE OFFICER MAURICIO DORAN, in his individual and official capacity; and MIAMI-

DADE COUNTY POLICE OFFICER BRIDGET DOYLE, in her individual and official capacity

for special damages, damages for past, present, and future medical expenses, compensatory damages,

exemplary and punitive damages, pain and suffering, and impairment of future earning capacity,

together with attorney's fees and the costs of this suit and such other relief as the court may deem just

and proper.

Dated this 13th day of May 2020.

Respectfully submitted,

LETT LAW, PLLC
*Attorney for the Plaintiff*
6303 Blue Lagoon Drive
Suite 400
Miami, Florida 33126
Phone: (305)-912-5388
Email: alett@lettlawfirm.com
/s/ Ariel Lett

Ariel Lett, Esq.
Florida Bar No. 115513