**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 20-CIV-22107-MGC**

MICHAEL MARTIN, and WILLIAM MARTIN
    Plaintiffs,

vs.

MIAMI-DADE COUNTY, FLORIDA; a
Florida County and Political Subdivision of
the State of Florida; MAURICIO DURAN,
Miami-Dade County Police Officer, in his
individual and official capacity; and BRIDGET
DOYLE, Miami-Dade County Police Officer,
in her individual and official capacity.

    Defendants.
_____/

**AMENDED COMPLAINT**

    **COMES NOW** plaintiffs, MICHAEL MARTIN (hereinafter "MICHAEL") and WILLIAM MARTIN (hereinafter "WILLIAM") (hereinafter collectively referred to as "Plaintiffs"), by and through the undersigned counsel and do hereby file this Amended Complaint against the defendants, MIAMI-DADE COUNTY, FLORIDA; MIAMI-DADE COUNTY POLICE OFFICER MAURICIO DURAN, Individually; and MIAMI-DADE COUNTY POLICE OFFICER BRIDGET DOYLE, Individually; (hereinafter collectively referred to as "Defendants") (hereinafter Defendants MAURICIO DURAN and BRIDGET DOYLE collectively referred to as "Defendant Officers"). In support thereof, Plaintiffs state the following:

**JURISDICTION AND VENUE**

    1.    This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees.

2. Venue is proper in Miami-Dade County, Florida, because the acts and omissions giving rise to this Amended Complaint occurred in Miami-Dade County, Florida.

3. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

## PARTIES

4. Plaintiff, MICHAEL MARTIN ("Plaintiff Michael"), is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

5. Plaintiff, WILLIAM MARTIN ("Plaintiff William"), is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

6. Defendant, MIAMI-DADE COUNTY, FLORIDA, is a municipal corporation and governmental subdivision which is organized and existing under the laws of the State of Florida. The County owns, operates, manages, directs and controls the MIAMI-DADE COUNTY POLICE DEPARTMENT.

7. Defendants, LIEUTENANT MAURICIO DORAN, and OFFICER BRIDGET DOYLE (hereinafter collectively referred to as "Defendant Officers"), are employees of the MIAMI-DADE COUNTY POLICE DEPARTMENT, and thus employees of Defendant MIAMI-DADE COUNTY, and upon information and belief are residents of Miami-Dade County, Florida and are otherwise *sui juris*.

8. Defendant Miami-Dade County was at all times relevant to this Amended Complaint responsible for its employees, including the employees of Miami-Dade County Police Department. Miami-Dade County is charged under the law with the duty of hiring, supervising, training,

disciplining, and establishing policy such that the conduct of its employees will conform to the Constitutions and laws of the State of Florida and of the United States of America.

9. Miami-Dade County, and its officers, Defendant Officers, are "persons" for purposes of 42 U.S.C. Section 1983.

10. At all times relevant to this cause, Defendant Officers acted in conformance with policy pertaining to, among other things, investigation, arrests, and use of force, as set by Miami-Dade County, as well as acting within the course and scope of their employment. At all times, Defendants acted under color of law.

11. This lawsuit arises out of Defendants' violation of Plaintiffs' federal constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and consequently, Plaintiffs have a viable claim for damages under 42 U.S.C. § 1983. Plaintiffs also have viable state law claims.

**GENERAL ALLEGATIONS**

12. On January 10, 2018, Plaintiffs were unlawfully detained, battered, and ultimately arrested by Defendant Officers.

13. On that day, Plaintiffs, who are brothers, were leaving the gym, walking casually towards a desolate parking lot, devoid of other patrons, heading towards their vehicle, when Defendant Doran approached them and began to question them.

14. Since they were leaving the gym, Plaintiffs were dressed in sweatshirts, also known as "hoodies", and basketball shorts, and both Plaintiffs were carrying backpacks. Plaintiff Michael was also carrying a water bottle.

15. At the time Defendant Doran approached them, Plaintiffs were not engaged in any apparent criminal activity, as they were walking to their vehicle.

16. As such, there was no probable cause for this stop.

17. However, Detective Doran would later recount that "due to the time of night" he began to observe Plaintiffs from a distance to "see their intent."

18. Detective Doran claimed he "observed both black males walking slowly looking into the parked county vehicle and officers' personal cars inside the station parking lot," at which time he "initiated his emergency equipment and attempted to speak to both males to see where they were headed and if they needed directions to exit the closed government establishment."

19. Detective Doran went on to state that as he approached Plaintiffs, "due to their unorthodox behavior and time of night, [he] requested additional units to assist in stopping both males to question their intentions in the area."

20. Defendant Doyle was the first assisting officer to arrive at the scene.

21. At all times relevant to this incident, Defendant Doyle was wearing a body camera.

22. However, Defendant Doyle's body camera footage clearly contradicts Defendant Doran's version of events.

23. Defendant Doyle's body camera footage begins with her arrival on scene, as she walks through what appears to be an alley, to approach both Plaintiffs and Defendant Doran, who are seen on the outskirts or perimeter of the desolate parking lot, while the alleged parked county vehicles are seen far in a distance.

24. While Defendant Doyle's body camera footage contradicts Defendant Doran's stated reason for the initial stop, it clearly depicts Defendant Doran following Plaintiffs and aggressively grabbing Plaintiff William's arm.

25. The body camera footage shows Defendant Doran aggressively following and grabbing Plaintiff William's arm twice, as Plaintiffs repeatedly informed the officers they were walking towards their vehicle.

26. During this exchange, Plaintiffs continue to walk casually and unassumingly towards their vehicle, posing no threat of harm to either Defendant Officers, as they attempted to inform the officers they were walking to their vehicle.

27. Despite their pleas, Defendant Doran continued to accost Plaintiffs and ultimately wrestled Plaintiff Michael to the ground.

28. At the time Defendant Doran grabbed Plaintiff Michael he was not posing a threat, he was not armed, and there was no probable cause for detaining the Plaintiffs.

29. As Defendant Doran forced Plaintiff Michael to the ground and laid on top of him, pinning him to the floor, Plaintiff William continued to protest against this hostile and aggressive encounter with the officers, and pleaded with Defendant Officers to desist in their actions.

30. As Defendant Doran pinned his brother to the floor, Plaintiff William continued to explain Plaintiffs were walking to their vehicle, and pointed in the direction of the vehicle.

31. Despite Plaintiff Williams' attempts and pleas with open outstretched arms, the body camera footage capture's Defendant Doran instructing Defendant Doyle to tase Plaintiff William.

32. Shortly thereafter, Defendant Doyle tases an unarmed Plaintiff William.

33. At all times relevant to this incident, Plaintiffs where unarmed, and posed no threat of immediate harm or death to Defendant Officers.

34. On January 10, 2018, the day of the incident, Defendant Officers, acting within the course and scope of their employment arrested Plaintiffs, for the following alleged criminal violations: Battery on a Law Enforcement Officer, in violation of F. S. §784.07(2)(b), a felony in the third degree; Resisting an Officer with Violence, in violation of F.S. §843.01, a felony in the third degree; and Loitering or Prowling, in violation of F.S. §856.021, a misdemeanor in the second degree.

35. However, in or about July 2018, a jury of their peers acquitted Plaintiffs, finding them not guilty of any wrongdoing.

36. As a result of Defendant Officer's illegal arrest and excessive use of force, Plaintiffs sustained injuries and endured pain and suffering from the moment they were unjustly profiled and accosted; forced to spend time in jail; and forced to live with the stress of facing felony charges.

37. As a result of Defendant Officers' illegal arrest and excessive use of force, Plaintiffs suffered special damages as they will be unable to obtain employment equivalent to people who do not have a record with felonious charges.

38. Defendant Officers' arrested Plaintiffs without probable cause *as a matter of fact* because Plaintiffs had not committed any offense whatsoever.

39. Lastly, Defendant Officers arrested Plaintiffs without probable cause *as a matter of law* because officers may not arrest a citizen when no crime has been committed or is in the process of being committed.

40. In plain, Plaintiffs Michael and William's only crime was being two Black men walking down the sidewalk at night.

41. Alternatively, even if the Defendant Officers' detention and arrest were lawful, the force used against Plaintiffs remains excessive and therefore, unlawful.

### COUNT I: FALSE ARREST/FALSE IMPRISONMENT CLAIM
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. SECTIONS 1983
### AND 1988 AGAINST DEFENDANT OFFICERS

42. Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 above.

43. Defendant Officers wrongfully detained Plaintiffs when Defendant Doran unlawfully stopped Plaintiffs, thereby restricting their movement, and subsequently unlawfully arrested Plaintiffs.

44. Defendant Officers, in all of their actions described in this Amended Complaint, deprived Plaintiffs of their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

45. Defendant Officers deprived Plaintiffs of their constitutional rights in a way that Defendant Officers fully understood, or should have understood, that their actions were wrongful and in violation of the law.

46. Defendant Officers personally caused Plaintiffs' arrest in the absence of probable cause that Plaintiffs committed any criminal offense.

47. Additionally or alternatively to the allegations set forth herein, if Plaintiffs were subjected to temporary detention by Defendant Officers prior to arrest, the temporary detention was in the absence of reasonable suspicion that Plaintiff committed any criminal offense, or other lawful authority.

48. The conduct of the Defendant Officers towards Plaintiffs was objectively unreasonable and violated Plaintiffs' clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. Section 1983 to be free from arrest in the absence of probable cause.

49. Alternatively, if false arrest/false imprisonment of Plaintiffs by Defendant Officers was committed in bad faith, with malicious purposes, or a willful or wanton disregard of human rights, safety or property, the false arrest/false imprisonment was committed by Defendant Officers in their individual capacity.

50. As a result of the unlawful detention and false arrest, Plaintiffs were deprived of their civil rights as guaranteed by the Fourth Amendment of the Constitution, suffered humiliation, degradation, apprehension for their bodily security, and other mental and emotional harms, which continue to this day and are likely to continue into the future.

51. Plaintiffs are entitled to attorney's fees expended in this litigation pursuant to 42 United States Code Section 1988.

WHEREFORE, Plaintiffs demands judgment for compensatory and punitive damages against Defendants and in addition thereto, demands the award of attorney's fees and court costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands a trial by jury on all issues so triable.

### COUNT II: DEPRIVATION OF CIVIL RIGHTS BY EXCESSIVE USE OF FORCE IN VIOLATION OF 42 U.S.C. SECTION 1983 AGAINST DEFENDANT OFFICERS

52. Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 above.

53. Plaintiffs posed no risk of harm to Defendant Officers.

54. Defendant Doran lacked probable cause to approach Plaintiffs.

55. Defendant Doran aggressively grabbed Plaintiff William's arm twice, as he, by his own account, attempted to inquire as to Plaintiffs' "intentions."

56. Thus, this unwarranted and unwanted physical interaction was not in furtherance of an arrest, but was in furtherance of an inquiry.

57. Alternatively, even if the Defendant Officers' detention and arrest of the Plaintiffs was lawful and valid, the force used in effectuating the arrest against Plaintiffs remains excessive.

58. As such, the use of force of Plaintiff William was unjustified, and demonstrated deliberate indifference to his constitutional civil rights.

59. Further, after the unwarranted aggressive grabbing of Plaintiff William's arm, Defendant Doran then slammed an unarmed Plaintiff Michael to the floor, pinning him to the ground and restricting his movement.

60. Prior to the excessive use of force, Plaintiff Michael posed no risk of harm to Defendant Doran.

61. Defendant Doran was at no risk of bodily harm from the unarmed Plaintiff Michael.

62. As such, the use of force of Plaintiff Michael was unjustified, constituted an unreasonable and excessive use of force, and demonstrated deliberate indifference to his constitutional civil rights.

63. In addition, without cause or justification Defendant Doyle contributed to, coordinated with, or otherwise supported Defendant Doran when Defendant Doran used excessive force upon Plaintiff Michael.

64. By supporting, contributing, or otherwise enabling Defendant Doran's actions, Defendant Doyle allowed an excessive, unnecessary, and disproportionate use of force to be inflicted upon Plaintiff Michael.

65. Defendant Doyle was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Michael's rights.

66. Similarly, the unarmed Plaintiff William posed no risk of harm to any officer when Defendant Doyle unjustly tased him.

67. Plaintiff William held his arms outstretched, displaying his empty hands and demonstrating his cooperation with Defendant Officers.

68. As Plaintiff William pointed towards the direction of his vehicle, without warning, Defendant Doyle tased him.

69. Defendant Doyle failed to issue a warning, was not at risk of harm, and was not in the process of effectuating an arrest prior to tasing Plaintiff William.

70. As such, the tasing of Plaintiff William by Defendant Doyle was unjustified, and constituted an unreasonable and excessive use of force.

71. Likewise, without cause or justification, Defendant Doran contributed to, coordinated with, or otherwise supported Defendant Doyle when Defendant Doyle used excessive force upon Plaintiff William.

72. By supporting, contributing, or otherwise enabling Defendant Doyle's actions, Defendant Doran allowed an excessive, unnecessary, and disproportionate use of force to be inflicted upon Plaintiff William.

73. Defendant Doran was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff William's rights.

74. The battery, detention, and arrest of Plaintiffs was the result of conduct that was reckless, malicious, and deliberately indifferent to Plaintiffs, and in depriving them of their constitutional rights.

75. Defendant Officers, while acting under color of law as authorized officers and agents of Miami-Dade County and the Miami-Dade Police Department, and while approaching and attempting to stop Plaintiffs in purported furtherance of their official duty, caused a constitutional deprivation of the rights of Plaintiffs, under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the comparable provisions of the Florida Constitution.

76. The actions alleged in this Amended Complaint directly and proximately resulted in injury to Plaintiffs.

77. As a direct result of the grossly negligent misconduct of Defendants as set out in this Amended Complaint and associated deliberate indifference, Plaintiffs were injured, and are entitled to recover damages flowing from the deprivations of Plaintiffs' constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution and Federal Law.

78. Plaintiffs are entitled to attorney's fees expended in this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiffs demand judgment and compensatory and punitive damages against Defendants, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

## COUNT III: MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983
## AGAINST DEFENDANT OFFICERS

79. Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 above.

80. On January 10, 2018, the day of the incident, Defendant Officers, arrested Plaintiffs, for the following alleged criminal violations: Battery on a Law Enforcement Officer, in violation of F. S. §784.07(2)(b), a felony in the third degree; Resisting an Officer with Violence, in violation of F.S. §843.01, a felony in the third degree; and Loitering or Prowling, in violation of F.S. §856.021, a misdemeanor in the second degree.

81. After arresting Plaintiffs, Defendant Officers caused a judicial proceeding to be commenced against Plaintiffs by the filing of an information in Miami-Dade County, Florida. The seizure was in no doubt in relation to further prosecution.

82. No reasonably cautious police officer in the position of Defendant Officers would have believed that Plaintiff was guilty-in-fact of the crime of Loitering or Prowling.

83. Plaintiffs were charged with Battery on a Law Enforcement Officer, in violation of F. S. §784.07(2)(b), a felony in the third degree; Resisting an Officer with Violence, in violation of F.S. §843.01, a felony in the third degree; and Loitering or Prowling, in violation of F.S. §856.021, a misdemeanor in the second degree.

84. Said judicial proceeding was instituted by Defendants without probable cause as Plaintiffs did not commit a crime in the officers' presence or otherwise.

85. There was an absence of probable cause for the original proceedings against Plaintiffs.

86. Defendant Officers racially profiled Plaintiff and in so doing, acted with malice in instituting the foregoing judicial proceeding which is implied by the lack of probable cause, lack of investigation, and/or with express malice as shown by their reckless disregard of the Plaintiffs' rights and their personal animosity and hostility towards Plaintiffs.

87. No arrest would have taken place and no charges would have been filed but for the actions of Defendant Officers.

88. Defendant Officers proximately caused criminal proceedings to be instituted or continued against Plaintiff with malice and in the absence of probable cause that Plaintiff committed any criminal offense by causing his police reports to be submitted to prosecuting authorities containing materially false statements and material omissions.

89. At all times material hereto, Defendant Officers knew that the probable cause affidavit would be submitted to prosecuting authorities, and would be relied upon by prosecuting authorities for the institution and continuation of criminal charges against Plaintiffs.

90. The conduct of Defendant Officers was reckless and without regard to whether the institution or continuation of criminal proceedings against Plaintiffs were justified, and in retaliation for Plaintiffs Civil Rights.

91. The facts of Plaintiffs' prosecution became known to many persons both known and unknown to Plaintiffs as a result of being made part of the public records of Miami-Dade County, Florida and appearing on court documents available to public scrutiny.

92. The criminal proceedings instituted and/or continued by Defendant Officers reached a bona fide resolution in Plaintiff's favor.

93.     As a proximate and direct result of the actions of Defendant Officers, Plaintiffs sustained damages as a result of having been brought into public scandal with great humiliation and damage to their reputation and having been deprived of their liberty and freedom.

WHEREFORE, Plaintiffs demands judgment for damages against Defendant Miami-Dade County, and Defendant Officers, Individually, for compensatory damages, special damages, costs of this action, and attorney's fees, pursuant to 42 U.S.C. Sections 1983 and 1988, and demands trial by jury on all issues so triable.

### COUNT IV: NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983 AGAINST DEFENDANT MIAM-DADE COUNTY

94.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 41 above.

95.     All conditions precedent to filing this action have been met by Plaintiffs or have been waived by Miami-Dade County and the Miami-Dade Police Department.

96.     On January 10, 2018, Defendant Officers were acting within the course and scope of their employment as Miami-Dade County police officers.

97.     Because of the failure of Miami-Dade County and the Miami-Dade Police Department to properly train and supervise police officers in the use of deadly force, Defendant Officers breached the duties owed to Plaintiffs, conducting themselves in a careless and negligent manner under circumstances in which a reasonable police officer would not have believed Plaintiffs posed an immediate threat of death or serious bodily harm to Defendant Officers or to anyone else.

98.     Defendant Doran breached the duties owed to Plaintiff William when he failed to adhere to accepted law enforcement standards and practices for detaining and arresting subjects.

99. Defendant Doran used an excessive amount of force in assaulting Plaintiff William twice, and tackling Plaintiff Michael to the ground without cause and in a reckless and negligent fashion.

100. Defendant Doran failed to engage in community policing, and failed to engage in de-escalation tactics during his encounter with Plaintiffs.

101. Defendant Doyle breached the duties owed to Plaintiff William when she failed to adhere to accepted law enforcement standards and practices for the use of firearms when detaining and arresting subjects.

102. Defendant Doyle used an excessive amount of force in tasing Plaintiff William without cause and in a reckless and negligent fashion.

103. Further, Defendant Miami-Dade County failed to properly train and supervise these officers.

104. Defendant Miami-Dade County breached their duties of reasonable care in the following ways:

   a. By failing to properly train, instruct and manage its officers with respect to the use of deadly force, and/or
   b. By negligently and carelessly failing to supervise its agents and officers with respect to the use of deadly force, and/or
   c. By negligently and carelessly failing to otherwise educate, inform, train, instruct and assess the officers involved in the shooting with regards to the proper use of firearms, proper techniques for detaining and arresting subjects, and other police techniques and methods, and/or
   d. By otherwise failing to exercise appropriate supervision and control over the officers involved in this shooting such that but for such negligent oversight, the shooting would not have occurred, and/or
   e. By carelessly and negligently failing to appropriately discipline its officers for past infractions, and/or

    f. By negligently and carelessly failing to provide available resources, back-up, and support for its officers in the field such that those officers resorted to the use of unnecessary deadly force.

105. Defendant Miami-Dade County failed to properly supervise these officers by providing supervisors who would rubber-stamp any use of force reports made regardless of whether the force was excessive or not.

106. Defendant Miami-Dade County has an unofficial policy or custom of conducting insufficient investigations calculated to exonerate its officers when its officers are accused of using excessive force during encounters with civilians.

107. These customs were ratified by the Defendant's Chief of Police and Then Mayor.

108. Then Miami Dade County Mayor Carlos Gimenez has gone as far as vetoing the Civilian Independent Review Panel in February of 2018, a panel that is tasked with conducting reviews of the Miami Dade Police Department and its officers' use of force incidents.

109. Similarly, every time that a use of force incident is covered by the media, Police Chief Juan J. Perez gives a press conference immediately exonerating his officers based solely on the officers' version of events.

110. These actions not only ratify the officers' illegal behavior, but also encourages and contributes to officers' excessive use of force on civilians.

111. The Then Mayor of Miami Dade County was aware of these events, since they have been widely publicized in the news media.

112. Yet, to date the Then Mayor had not called for new measures to be put in place to rectify the fact that officers continue to use excessive force against civilians, and that fellow officers continue to sit by idly and just watch as their fellow officers use excessive force on civilians.

113. Defendant, Miami-Dade County, owed Plaintiffs, as well as all residents of Miami-Dade County, a duty of care to hire and retain and supervise competent, law-abiding officers, as well as to enact policies that ensure that officers do not use excessive force against civilians.

114. Defendant, Miami-Dade County, breached its duty of care to Plaintiffs by hiring and retaining, and improperly supervising Defendant Officers.

115. As a proximate and direct result of the negligence of Defendant Miami-Dade County, Plaintiff suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, mental pain and suffering, loss of the capacity for the enjoyment of life, the expense of medical care and treatment, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

WHEREFORE, Plaintiffs demands judgment for compensatory damages and court costs against Defendants, pursuant to 42 U.S.C. Sections 1983 and 1988 and requests trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS, MICHAEL and WILLIAM MARTIN, demand a trial by jury, and judgment against the DEFENDANTS, MIAMI-DADE COUNTY, MIAMI-DADE COUNTY POLICE OFFICER MAURICIO DORAN, in his individual and official capacity; and MIAMI-DADE COUNTY POLICE OFFICER BRIDGET DOYLE, in her individual and official capacity for special damages, damages for past, present, and future medical expenses, compensatory damages, exemplary and punitive damages, pain and suffering, and impairment of future earning capacity,

together with attorney's fees and the costs of this suit and such other relief as the court may deem just and proper.

Dated this 8th day of August 2022.

                                                Respectfully submitted,

                                                LETT LAW, PLLC
                                                *Attorney for the Plaintiff*
                                                6303 Blue Lagoon Drive
                                                Suite 400
                                                Miami, Florida 33126
                                                Phone: (305)-912-5388
                                                Email: alett@lettlawfirm.com
                                                /s/ Ariel Lett_____
                                                Ariel Lett, Esq.
                                                Florida Bar No. 115513