UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 20-CV-22107-PAS

MICHAEL MARTIN; and
WILLIAM MARTIN,

  Plaintiffs,

v.

MIAMI-DADE COUNTY, FLORIDA, a
Florida County and Political Subdivision
of the State of Florida; MAURICIO DURAN,
Miami-Dade County Police Officer, in his
individual and official capacity; and
BRIDGET DOYLE, Miami-Dade County
Police Officer, in her individual and
official capacity,

  Defendants.
_____/

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

THIS MATTER is before the Court on the Motion to Dismiss the Amended Complaint [DE 34] filed by Defendants Miami-Dade County, Mauricio Duran, and Bridget Doyle ("Defendants"). Plaintiffs Michael Martin and William Martin's ("Plaintiffs") Amended Complaint [DE 30] asserts 42 U.S.C. § 1983 claims of false arrest, excessive use of force, malicious prosecution, and municipal liability for failure to train. Defendants seek to dismiss the first three counts on qualified immunity grounds and the fourth count for failure to state a claim.

The Court has reviewed the Motion, Plaintiffs' Response [DE 42], Defendants' Reply [DE 43], the record, and is otherwise fully informed. For the reasons set out below, Defendants' Motion is DENIED as to the claims of false arrest, excessive use of force, and malicious prosecution but it is GRANTED as to the municipal liability claim.

1

## I. FACTUAL BACKGROUND

Around 2:45 am on January 10, 2018, Plaintiffs, two Black males wearing sweatshirts, also known as "hoodies," and basketball shorts, were casually walking to their car from the gym in a parking lot devoid of other patrons. DE 30 ¶¶13-14. Both Plaintiffs were carrying backpacks and Plaintiff Michael Martin ("Plaintiff Michael") was also carrying a water bottle. DE 30 ¶14. Although Plaintiffs were not engaged in any apparent criminal activity, Lieutenant Mauricio Duran ("Defendant Duran") approached them.

Defendant Duran later claimed "due to the time of night" he observed Plaintiffs from a distance to "see their intent." DE 30 ¶17. He further claimed he saw Plaintiffs walking slowly through the police station parking lot looking into the parked county vehicle and officers' personal cars at which time he "initiated his emergency equipment and attempted to speak to both males to see where they were headed and if they needed directions to exit the closed government establishment." DE 30 ¶18. Defendant Duran further stated that due to Plaintiffs' "unorthodox behavior and time of night," he requested additional units to assist in stopping Plaintiffs to question their intentions in the area. DE 30 ¶19.

There are two parking lots to the south of the Miami-Dade Police Department -- one immediately south and the second lot directly south of the first. DE 20-2.[1] Directly east of the first police station parking lot is the library. *Id.* Directly south of the library is the library parking lot that is east of and parallel to the second lot behind the police station, and further south, running the length of both these lots is another parking lot near the Humane Society of Greater Miami. *Id.*[2] There is no evidence that these lots are fenced.

---

[1] The Court takes judicial notice of the Google maps [DE 20-2] Defendants offered in support of their first Motion to Dismiss [DE 20], to which Plaintiffs have not objected. *See United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011) (taking judicial notice of map of city, which contained addresses listed in indictment).
[2] There is an additional parking lot east of the library parking lot.

2

Officer Bridget Doyle ("Defendant Doyle") was the first to respond and had activated her body camera.[3] DE 30 ¶¶20-21. Based on the footage from Defendant Doyle's body camera, Defendant Duran's encounter with Plaintiffs did not take place in the police station parking lot but in an undetermined parking lot, and the footage does not show any cars nearby. DE 30 ¶23. Based on the footage, Defendant Doyle walked through a dark alley and approached Defendant Duran and Plaintiffs. *Id.* Plaintiffs were walking away while Defendant Duran called after them. Defendant Duran caught up with them and grabbed Plaintiff William Martin's ("Plaintiff William") right arm. DE 30 ¶24. Plaintiff William then broke free of Defendant Duran's grip and Plaintiffs kept walking away from him. DE 30 ¶26.

As Plaintiffs continued to protest "This is assault," Defendant Duran tackled Plaintiff Michael to the ground. DE 30 ¶27. While Defendant Duran and Plaintiff Michael were struggling on the ground, Plaintiff William kept standing and pleading with the officers. DE 30 ¶30. Defendant Duran then looked up at Defendant Doyle and urged her to tase Plaintiff William. DE 30 ¶31. Defendant Doyle shortly thereafter discharged her taser on Plaintiff William. DE 30 ¶32. Within a few minutes, with the help of additional officers, Plaintiffs were arrested for battery on a law enforcement officer (Fla. Stat. § 784.07(2)(b)), resisting an officer with violence (Fla. Stat. § 843.01), and loitering or prowling (Fla. Stat. § 856.021). DE 30 ¶34. In July 2018, a jury acquitted Plaintiffs of all charges. DE 30 ¶35.

---

[3] The Court takes judicial notice of the contents of Defendant Doyle's body camera footage, to which Plaintiffs do not object and to which they refer to in their Amended Complaint [DE 30 ¶¶ 21–25, 31]. *See Hi-Tech Pharm., Inc. v. HBS Intl. Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("[A court] may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.").

## II. LEGAL STANDARD

Defendants' motion seeks to dismiss this action on the grounds for failure to state a claim as to municipal liability (Count IV) and because Defendant Officers are entitled to qualified immunity for the alleged Fourth Amendment violations of false arrest (Count I), excessive force (Count II), and malicious prosecution (Count III). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a Rule 12(b)(6) motion, a court accepts the complaint's well-pled facts as true and views the complaint in the light most favorable to the plaintiff. *McCoig v. City of Rockledge, Fla.*, 2022 WL 16827429, at *1 (11th Cir. Nov. 9, 2022) (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007)).

An officer who asserts a qualified immunity defense in a § 1983 case bears the initial burden of showing that he was acting within his discretionary authority. *Patel v. Lanier County Georgia*, 969 F.3d 1173, 1181 (11th Cir. 2020) (internal quotation marks omitted). Once a police officer asserting this defense meets his or her initial burden of showing he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to plead facts that (1) the police officer violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. *Alston v. City of Darien*, 750 Fed. Appx. 825, 831-32 (11th Cir. 2018) (internal quotation marks and citation omitted).

The key factual issue in this case is whether Defendant Officers had arguable reasonable suspicion to support an investigatory stop. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000) (internal quotation marks and citations omitted). "[A]n officer may

4

conduct a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot, without violating the Fourth Amendment." *Williams v. Miami-Dade Police Dept.*, 297 Fed. Appx. 941, 944 (11th Cir. 2008) (quoting *United States v. Hunter,* 291 F.3d 1302, 1307 (11th Cir.2002)). The officer conducting such a stop must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). The officer must have "some minimal level of objective justification" taken from the totality of the circumstances. *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7–8 (1989)).

### III. ANALYSIS

#### A. Based on the allegations, Defendant Officers are not entitled to qualified immunity on the false arrest and excessive use of force counts.

In considering Defendants' motion, there is no dispute that Defendant Officers were acting within their discretionary authority. DE 42 at 4. The parties also do not dispute that if there was a constitutional violation, the constitutional right was clearly established at the time. DE 34 at 6. The well-pled facts in the Amended Complaint, considered in the light most favorable to Plaintiffs, plausibly state a claim for a constitutional violation of their right to be free of an unlawful investigatory stop and seizure and ensuing arrest for battery on a police officer. While Defendants' Motion asserts that Defendants Officers had arguable reasonable suspicion to stop Plaintiffs and arguable probable cause for the arrest, the alleged facts raise issues that call this defense into question.

The asserted basis for the investigatory stop had to occur prior to the time Officer Doyle arrived and the body camera footage began. While Defendant Duran's arrest affidavit claims he observed Plaintiffs walking slowly through a closed government complex parking lot, looking into police and County cars, such behavior is not shown in Defendant

5

Doyle's body camera footage. Thus, Defendant Duran's asserted reasons for seeking to speak with Plaintiffs were the hour of the night, and that they were two Black males in hoodies. He allegedly called for backup to stop them because he saw them walking slowly and looking into car windows. While his affidavit terms this as "unorthodox behavior," there are no known facts to suggest at any time Plaintiffs engaged in potential criminal activity. For example, did Plaintiffs stop at each car, test car doors, commit acts of vandalism or other specific acts that were objectively potential criminal activity? Moreover, there are many unknowns including but not limited to: where Plaintiffs actually were; where Defendant Duran was when he initially allegedly observed Plaintiffs; where he and Plaintiffs were when he called for backup; the amount of time it took Plaintiffs to walk across the parking lot that raised Defendant Duran's concern about the vehicles; the distance from that lot to the unidentified parking lot where he confronted Plaintiffs; the amount of time between the initial observation and confrontation; the amount of time from his call for backup to Defendant Doyle's arrival; and any prior car break-ins in the area.

Further, there is a question as to why Defendant Duran, who was in a vehicle, did not drive up to Plaintiffs while they were allegedly in the parking lot that caused his concern, to ask their intent to allay his suspicions. Even more importantly, there are also unanswered questions regarding why he continued to follow them after they had left the parking lot without engaging in any criminal activity, and why he aggressively pursued Plaintiffs, despite Plaintiffs not being legally obligated to answer his questions.

Even assuming for the purpose of the motion that Defendant Duran initially had arguable reasonable suspicion for an investigatory stop as to potential criminal activity involving police cars in the open police station parking lot, such arguable reasonable suspicion dissipated when Plaintiffs had left the lot without even attempting to break into or damage the police cars. An investigative stop must cease once there is no longer any

6

basis for suspecting criminal activity. *See Jessup v. Miami-Dade County*, 440 Fed. Appx. 689, 694 (11th Cir. 2011) (holding there was no lawful reason to continue any detention once officers found out there was no stolen property); *Croom v. Balkwill*, 645 F.3d 1240, 1251 n.15 (11th Cir. 2011) (stating that in traditional *Terry* investigative stop, detention "required to cease once law enforcement's reasonable, articulable suspicions of [plaintiff] were allayed"). If Defendant Officers' investigatory stop was invalid, it logically follows that their continued aggressive pursuit and subsequent seizure of Plaintiffs in the new, well-lit, open, and empty lot was not a "lawful execution of any legal duty." Fla. Stat. §§ 843.01, 843.02. Thus, Defendant Officers would lack arguable probable cause to arrest Plaintiffs.

Turning to the excessive use of force claim, if the stop and arrest were illegal in Count I, that makes any use of force alleged in Count II excessive, thus defeating any qualified immunity defense to that claim. *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir.1995)) ("Under this Circuit's law ... a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.").

Considering the factual allegations in the light most favorable to Plaintiffs, their Amended Complaint survives Defendant Officers' Motion to Dismiss on the qualified immunity defense. The facts in the Amended Complaint plus the maps and body camera footage can be read to say that Defendant Duran simply saw the two Black Plaintiffs at night, aggressively pursued them, and when they did not respond to him, seized Plaintiff Michael, told a lower ranking officer to tase Plaintiff William and thereafter fabricated the basis to arrest them. Such raises factual issues as to the viability of the qualified immunity defense. Thus, their Motion to Dismiss [DE 34] is denied as to the first two counts.

### B. Plaintiffs' Amended Complaint makes a facially plausible malicious prosecution claim.

Defendants' Motion to Dismiss [DE 34] is also denied as to the malicious prosecution count. To establish a § 1983 malicious prosecution claim, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). For a common law malicious prosecution claim, a plaintiff must establish the following four elements: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. *Id.* at 882. In an action to recover damages for malicious prosecution where, as here, the evidence is in dispute, the existence of malice and want of probable cause are questions of fact for the jury. *Williams v. Miami-Dade Police Dept.*, 297 Fed. Appx. 941, 947 (11th Cir. 2008) (internal quotation marks and citation omitted).

Viewing the allegations in the Amended Complaint [DE 30] in the light most favorable to Plaintiffs, Plaintiffs' malicious prosecution claim is sufficiently plausible to survive a motion to dismiss. Citing *Kingsland*, Defendants contend that Plaintiffs did not suffer an unreasonable seizure under the Fourth Amendment and therefore, cannot make a plausible malicious prosecution claim. *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004), *abrogated by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019); DE 34 at 15. Defendants' reliance on *Kingsland* is misplaced, however. The Eleventh Circuit recognized the abrogation of *Kingsland* in the context of malicious prosecution claims.[4]

---

[4] *See, e.g., Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020) ("Although we have at times looked to modern tort law when adjudicating claims of malicious prosecution under section 1983, *see, e.g., Kingsland*, 382 F.3d at 1234 (examining Florida's modern approach to malicious prosecution) ... the Supreme Court has clarified

8

Moreover, other Eleventh Circuit precedents do not support the *Kingsland* court's proposition that a seizure after arraignment or indictment is required for a viable § 1983 malicious prosecution claim. The Eleventh Circuit has repeatedly held that an arrest without probable cause constitutes an unreasonable seizure for purposes of § 1983 malicious prosecution claims. *See, e.g., Manners v. Cannella*, 891 F.3d 959, 975 (11th Cir. 2018) ("[A] plaintiff asserting malicious prosecution under § 1983 must establish that there was an unreasonable seizure made in violation of the Fourth Amendment, such as an arrest made without probable cause"); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) ("[I]t is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment."); *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003) ("[A] seizure (i.e., an arrest in fact) occurred in the course of the prosecution").

In addition, the element of malice required under the common law tort of malicious prosecution is in dispute. Namely, the parties disagree as to the extent to which Defendant Officers' police reports contained materially false statements and material omissions. DE 30 ¶88. This dispute is therefore rightly reserved for the jury. *Williams*, 297 Fed. Appx. at 947.

### C. Plaintiffs fail to state a municipal liability claim.

Defendants seek to dismiss Count IV because they maintain Plaintiffs' Amended Complaint fails to allege that any constitutional violation that Plaintiffs suffered was due to an official County policy or custom. DE 34 at 16. Defendants' motion is well-taken as to this Count because Plaintiffs' Count IV does not allege facts that the constitutional

---

that the relevant common-law principles are those that were 'well settled at the time of [section 1983's] enactment,' *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019)").

9

violation they suffered was caused by an official policy or unofficial custom of Miami-Dade County.

A § 1983 municipal liability claim that is premised on a constitutional violation caused by the County itself cannot be based on theories of *respondeat superior* or vicarious liability. *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 819 (11th Cir. 2017) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). The Supreme Court has established the criteria to hold a municipality liable for the unconstitutional actions of its officials. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). To impose *Monell* liability, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). A single instance of unconstitutional conduct can create *Monell* liability only when proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. *Martin v. City of Macon Georgia*, 702 Fed. Appx. 941, 944 (11th Cir. 2017) (internal quotation marks and citation omitted); *see also Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("A single incident would not be so pervasive as to be a custom").

Inadequate police training may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact. *City of Canton, Ohio*, 489 U.S. at 388 (emphasis added). Deliberate indifference is a stringent standard of fault, which ordinarily requires showing a pattern of similar constitutional violations by untrained employees. *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). A municipality's culpability for a deprivation of rights is at its

10

most tenuous where a claim turns on a failure to train. *Id.* at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion)).

In alleging their municipal liability claim, Plaintiffs rely on a theory that the County failed to properly train and supervise its officers. DE 30 ¶103. However, they do not allege facts to meet the stringent "deliberate indifference" standard. *Connick*, 563 U.S. at 61. Plaintiffs did not identify an officially promulgated Miami-Dade County policy that caused the constitutional violation; neither did they point to an unofficial custom or practice. The facts in the amended complaint simply identify the incident from January 10, 2018, and do not discuss a pattern of similar constitutional violations stemming from some County policy or custom. DE 30 ¶¶94-115. As such, Defendants' Motion to Dismiss [DE 34] as to the *Monell* liability claim is granted.

## IV. CONCLUSION

Based on the record to date, there are disputed factual issues of whether Defendant Officers' stop and arrest of Plaintiffs were constitutionally valid. Thus, at this stage of the case, discovery is necessary to determine whether Defendant Officers are entitled to the qualified immunity defense, requiring denial of the Motion to Dismiss [DE 34] on the first two counts. The Motion to Dismiss [DE 34] is also denied as to the malicious prosecution count, as Plaintiffs make a facially plausible claim. However, Plaintiffs' municipal liability claim does not survive the Motion to Dismiss [DE 34], as Plaintiffs failed to allege facts that a specific County policy or custom caused their alleged constitutional violation.

Accordingly, it is

ORDERED THAT:

1) Defendants' Motion to Dismiss [DE 34] is
   a) DENIED as to Counts I, II and III;
   b) GRANTED as to Count IV; and

2) Defendant Officers shall file their Answer to the Amended Complaint [DE 30] no later than March 28, 2023.

DONE and ORDERED in Miami, Florida, this __13th__ day of March, 2023.

_____
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc:   The Honorable Jonathan Goodman
      All counsel of record